# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

CLAUDIA VECCHIO, )
)
        Plaintiff, )
v. )
) Case No. 05-3194-CV-S-FJG
THOMAS W. SCHAEFER, )
)
        Defendant. )

## ORDER

Currently pending are (1) Defendant's Motion for Summary Judgment (Doc. No. 37); (2) Defendant's Motion to Strike Plaintiff's Witnesses (Doc. No. 46); and (3) Plaintiff's Motion to Strike Defendant's Witnesses (Doc. No. 49).

**I.     Defendant's Motion for Summary Judgment (Doc. No. 37)**

Defendant Schaefer moves for summary judgment because plaintiff has failed to designate medical experts who can testify that she contracted genital herpes from defendant. Defendant states that plaintiff needs an expert medical opinion as to causation, and without a designated expert, her case cannot proceed. Notably, plaintiff responds that her treating physicians can testify as fact witnesses about the cause of her medical condition, citing the Court's Scheduling and Trial Order (Doc. No. 26).

**A.     Facts**

Claudia Vecchio first had sexual intercourse in December 2000, with a man named Mr. Redden. She had sex with Mr. Redden four times from December 2000 through October 2001. Plaintiff's second sexual partner was a man named Mr. King. She first had sex with him in November 2001. They had sex three times, with the last time being in June

2002. Plaintiff's third sexual partner was a man with whom she had sex on August 21, 2002 while in Chicago; plaintiff does not recall this man's name. The couple used a condom. Plaintiff's fourth sexual partner was defendant, Thomas W. Schaeffer.

Plaintiff and defendant first had sexual intercourse during the early morning of September 28, 2002. They next had sexual intercourse again that Saturday night, also September 28, 2002. They had sexual intercourse again on Sunday, September 29, 2002. Plaintiff and defendant did not discuss sexually transmittable diseases during their first few sexual encounters. Neither of them asked about such medical history and neither one of them informed the other about any concerns of such medical history.[1] Thereafter, defendant and plaintiff dated in a romantic relationship that by plaintiff's account lasted until March 17, 2004. During the period of time of the romantic involvement between plaintiff and defendant, they had sexual intercourse approximately four times a week, on the average. Since first having sexual intercourse with Mr. Schaeffer on September 28, 2002, plaintiff has not had sexual intercourse, or any sexual contact of any kind, with any other person.

On October 9, 2002, during a routine annual physical, plaintiff was given a pap smear as part of the normal procedure. She reported no problems to her physician. On October 28, 2002, plaintiff was told the pap smear results were abnormal and that she had Human Papilloma Virus, also known as "HPV." On the evening of October 30, 2002, plaintiff told defendant that she had HPV. Defendant then told plaintiff that he was infected

---

[1] However, plaintiff notes that her deposition further establishes, "I discussed my risk with him which at that point was getting pregnant, and he told me he'd had a vasectomy." Deposition of Plaintiff, Ex. 4 to Doc. No. 38, 10:20-22.

2

with the herpes virus.  Prior to this discussion with defendant on October 30, 2002, defendant never told plaintiff he had any form of sexually transmitted disease.  In early November 2002, plaintiff went to the office of her physician, Dr. Carol Berner.  She was complaining of painful, burning sores near her vagina.  At that time she was given an initial diagnosis of genital herpes.  Approximately a week later laboratory tests confirmed that plaintiff had been infected with Herpes Simplex Virus, Type 2, otherwise known as genital herpes.

Defendant notes that on the 7th day of November, 2001 (over 11 months prior to any sexual encounter between plaintiff and defendant) plaintiff was seen in Dr. Berner's office and advised that she was concerned that she might have genital herpes and had noticed some "bumps" in her genital area.[2]  Plaintiff was not tested for genital herpes by Dr. Berner at any time in 2001 after expressing concern that she might have developed that condition during the consultation with Dr. Berner's office on November 7, 2001.[3]

Defendant states that Claudia Vecchio and her counsel have not designated a single medical expert witness to testify as to causation in this case, or at any time disclosed any medical expert.  Plaintiff, however, states that she has utilized her treating physicians to testify as to causation, purportedly in compliance with the Court's Scheduling and Trial

---

[2]Plaintiff admits that she made this statement; however, she denies that these "bumps" have anything to do with this case.  Plaintiff states the "bumps" referenced here were completely unrelated to Plaintiff's actual herpes infection and initial outbreak that happened shortly after having sex with Defendant.

[3]Although this is technically true, plaintiff denies this as stated, because there was no medical indication that the "bumps" she observed were herpes.  Plaintiff states in her affidavit that her herpes outbreaks consist of open sores of varying size and levels of pain, the immediate need to urinate, painful muscle cramps in her genital area, and sores on various parts of her body (not "bumps").  Exhibit E to Doc. No. 51.

Order (Doc. No. 26).

## B. Standard

Summary judgment is appropriate if the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). The facts and inferences are viewed in the light most favorable to the nonmoving party. Fed. R. Civ. P. 56(c); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-590 (1986). The moving party must carry the burden of establishing both the absence of a genuine issue of material fact and that such party is entitled to judgment as a matter of law. Matsushita, 475 U.S. at 586-90.

Once the moving party has met this burden, the nonmoving party may not rest on the allegations in the pleadings, but by affidavit or other evidence, must set forth facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); Lower Brule Sioux Tribe v. South Dakota, 104 F.3d 1017, 1021 (8th Cir. 1997). To determine whether the disputed facts are material, courts analyze the evidence in the context of the legal issues involved. Lower Brule, 104 F.3d at 1021. Thus, the mere existence of factual disputes between the parties is insufficient to avoid summary judgment. Id. Rather, "the disputes must be outcome determinative under prevailing law." Id. (citations omitted).

Furthermore, to establish that a factual dispute is genuine and sufficient to warrant trial, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the facts." Matsushita, 475 U.S. at 586. Demanding more than a metaphysical doubt respects the appropriate role of the summary judgment procedure: "Summary judgment procedure is properly regarded not as a disfavored

4

procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex, 477 U.S. at 327.

**C.     Discussion**

Defendant argues that plaintiff has no proof of causation, and her complaint is based on speculation and conjecture, in that plaintiff could have been infected by any one of her three prior sexual partners. Defendant notes, "The law in the state of Missouri has long been that a claim for negligence must be based upon substantial evidence which establishes both causation in fact and proximate cause. Causation in fact is a jury question, whereas proximate cause is a question of law for the court. Payne v. City of St. Joseph, 135 S.W.3d 444[, 450-51] (Mo. App. W.D. 2004)." Defendant states that although plaintiff attempted to elicit expert testimony from her treating physicians (who were deposed after the deadline for designating experts), no treating physician was ever designated as an expert prior to the deadline for doing same established by the Scheduling and Trial Order. Defendant states that "[t]he injury complained of by the plaintiff in this case is one that requires scientific diagnosis and a level of sophistication beyond the realm of lay understanding that therefore must be established through expert testimony. When a claim of injury is a sophisticated one requiring expert medical testimony, a submissible case may not be made without such testimony and summary judgment is appropriate under such circumstances. Turner v. Iowa Fire Equipment Company, 229 F.3d 1202[, 1210] (8th Cir. 2000)." Notably, however, defendant states he does not deny that plaintiff contracted genital herpes and that defendant had genital herpes before becoming romantically involved with plaintiff.

5

Plaintiff responds that it is undisputed that (1) prior to having sexual intercourse with defendant, she had no symptoms of genital herpes; (2) defendant did not inform plaintiff when they first had sexual intercourse that he had been previously infected with genital herpes and knew he had the disease; (3) within the anticipated time frame for a person to suffer an initial outbreak from genital herpes after first being exposed, plaintiff had such an outbreak after contact with defendant; and (4) both plaintiff's treating physicians have testified that based on the time frames during which plaintiff first had sex with defendant and suffered her initial outbreak, defendant was the source of plaintiff's infection.

Plaintiff further states that the federal rules and the Court's Scheduling and Trial order (Doc. No. 26) do not require treating physicians to be identified as expert witnesses as long as their testimony concerns matters involving the treatment of the party patient. Plaintiff notes that in her initial Rule 26(a)(1) disclosures (which she states were filed on or about December 5, 2005), plaintiff identified Drs. Berner and Vanek as treating physicians, and further notes that plaintiff also identified these witnesses in her interrogatory answers and executed medical authorizations allowing defendant to obtain her medical records from these treating physicians. Plaintiff notes that the Court's Scheduling and Trial Order (Doc. No. 26) indicates the extent to which treating physicians' testimony would be considered beyond that of a fact witness, at Section 7(a)(2)(e):

> e. Treating physicians may testify as fact witnesses, expert witnesses, or both. To the extent that a treating physician may testify as an expert, compliance with 7(a)-(d) is required. To the extent that a treating physician may testify as a fact witness, production of an affidavit or records is not required, however the party intending to use such fact testimony shall disclose the name of that witness by the deadline indicated by 7(a)(1).
>
> 1. Fact Witnesses: A treating physician will be considered a fact

>    witness when testifying as to information developed or opinions drawn during the treatment of a patient so long as the information or opinions were necessary in furtherance of the patient's treatment. Examples of fact testimony include: <u>the cause of the medical condition</u>, the diagnosis, the prognosis and the extent of disability caused by the condition, if any. This is a non-exhaustive list of examples.
>
> 2. Expert Witnesses: A treating physician will be considered an expert witness when testifying outside the scope of 7(e)(1). Examples of expert testimony include: testimony as to medical matters unrelated to the actual care and treatment administered, testimony regarding the patient's previous care unrelated to the treatment at issue, and opinions that were not derived from the treating physician's personal knowledge of the case or were developed or acquired in anticipation of litigation. This is also a non-exhaustive list of examples.

(Emphasis added). Plaintiff states, therefore, that the Scheduling and Trial Order allows her treating physicians to testify as to causation, and defendant is not prejudiced by allowing this information in because defendant was aware of the treating physicians and their medical records months in advance of the treating physicians' depositions.

Defendant replies that plaintiff can use the treating physicians as to the non-specific cause of plaintiff's infection (intimate relations with another infected individual), the nature of those relations, how the disease is typically transmitted, and whether it can be asymptomatic. However, defendant states that given plaintiff's social history, allowing a physician to opine as to whether to a reasonable degree of medical certainty the defendant is the source of plaintiff's infection is a matter that is beyond the scope of a matter related "to the actual care and treatment administered" as specified within the court's Scheduling and Trial Order. Again, defendant asserts that plaintiff had acquired another STD (HPV) on or before October 9, 2002 [prior to her relationship with defendant], and one of plaintiff's admitted prior sexual partners is a man whose name she cannot recall who she had

7

intercourse with approximately a month before her involvement with defendant. Defendant notes that there are five possibilities as to from whom plaintiff contracted herpes: (1) Roger Redden (medical history unknown); (2) Dave King (medical history unknown); (3) unknown Chicago man (medical history unknown); (4) defendant prior to disclosure of his condition to plaintiff; and (5) defendant subsequent to full disclosure of condition to plaintiff. Only option (4) results in liability for defendant. Defendant states that without a properly disclosed medical expert, plaintiff's case is based on speculation and conjecture, and cannot proceed to trial.

Defendant concludes, stating that if the Court should deny this motion for summary judgment, defendant "who was never forewarned of any expert medical testimony prior to the expiration of all deadlines, should be allowed to obtain rebuttal testimony prior to proceeding to trial."

Although plaintiff is correct that the Scheduling and Trial Order (Doc. No. 26) provides that treating physicians may testify as fact witnesses with respect to the cause of the medical condition, the Court agrees with defendant that plaintiff has taken extreme liberties with the Scheduling and Trial Order's language as to what "cause of the medical condition" means. Plaintiff's treating physicians may testify as to what they learned in examination of plaintiff, tests conducted on plaintiff, and other matters where the physician's opinion was "drawn during the treatment of a patient so long as the information or opinions were necessary in furtherance of the patient's treatment." See Doc. No. 26, ¶ 7(e)(1). In particular, Dr. Berner's deposition testimony at 60:20–62:13 and Dr. Vanek's deposition testimony at 25:3–29:5 are in response to improper questions from plaintiff's counsel, presenting a fact pattern in a light favorable to plaintiff and asking for the

8

Case 6:05-cv-03194-FJG   Document 57   Filed 06/22/07   Page 8 of 12

physician's opinion based on a reasonable degree of medical certainty. For the treating physicians to opine on facts not contained within their own treatment notes amounts to improper expert testimony.

Nonetheless, the Court finds that questions of material fact remain and summary judgment should not be granted. This is because certain of Dr. Berner's testimony presented to the Court appears to be proper fact witness testimony under the rules and this Court's Orders. In particular, in her treatment notes (Ex. I to Doc. No. 51), Dr. Berner notes that plaintiff had a new sexual partner approximately 6 weeks before her visit, no history of similar symptoms, and diagnosed "genital herpes, primary episode." In addition, the testimony found at 53:18 - 54:14 of Dr. Berner's deposition appears to be proper fact witness testimony. In this Court's opinion, these constitute sufficient facts to allow plaintiff's case to go to trial. Therefore, defendant's motion for summary judgment (Doc. No. 37) will be **DENIED.**

Further, defendant suggests that he ought to be allowed the opportunity to name a rebuttal expert witness in the event that his motion for summary judgment is denied. Given that the Scheduling and Trial Order allows treating physicians to testify as fact witnesses, defendant should have been on notice that he might need an expert witness to refute plaintiff's causation arguments. The Amended Scheduling and Trial Order (Doc. No. 26) provided that defendant's expert affidavits were due on December 15, 2006. Discovery closed on February 28, 2007. Nonetheless, defendant did not request leave to obtain his own expert witness until over three months after the close of discovery (and over three months after the depositions of plaintiff's treating physicians). Defendant's request to

9

obtain a rebuttal expert witness at this late date is **DENIED.**

## II.     Defendant's Motion to Strike Plaintiff's Witnesses (Doc. No. 46)

Defendant moves to strike portions of the deposition testimony of doctors Berner and Vanek for the same reasons as discussed with the motion for summary judgment. In particular, defendant seeks to strike the portions of the doctors' depositions where plaintiff's counsel posed an expert medical causation question, including the language as to whether the treating physician held an opinion to a reasonable degree of medical certainty as to causation based upon facts, which they were asked to assume. See Berner Depo, pp. 60-62; Vanek Depo., pp. 25-29.  For the same reasons as stated above in relation to defendant's motion for summary judgment, this Court agrees that the testimony elicited by plaintiff's attorney at 60:20–62:13 of Dr. Berner's deposition and 25:3–29:5 of Dr. Vanek's deposition, is expert opinion that ought to have been properly disclosed in an expert affidavit, as set out in the Court's Scheduling and Trial Order (Doc. No. 26).  Therefore, defendant's motion (Doc. No. 46) is **GRANTED**, and those passages of Drs. Berner and Vanek's depositions will be **STRICKEN**.

## III.    Plaintiff's Motion to Strike Defendant's Witnesses (Doc. No. 49)

Plaintiff moves to strike three of the seven witnesses listed on defendant's witness list.  Two of the three witnesses plaintiff seeks to strike are men identified by plaintiff in her interrogatory answers as men she had sexual intercourse with prior to defendant, Roger Redden and Dave King.  Neither of these men were deposed, and defendant never previously indicated he would use these people as witnesses in his case in chief.  Plaintiff states that defendant never filed Rule 26(a)(1) initial disclosures, nor did defendant file any

supplemental disclosures to his discovery responses indicating that he would call Redden or King as witnesses in his case in chief.

The third witness, Angie Helwig, is a woman identified by defendant during mediation held on February 14, 2007 (just two weeks before the close of discovery). Defendant noticed a deposition of Ms. Helwig on February 15, 2007, with the deposition to be held on February 22, 2007. Plaintiff filed a motion to quash this deposition (Doc. No. 30) because defendant disclosed her identity too late before the close of discovery. This Court agreed, and the deposition was quashed. See Doc. No. 31.

Plaintiff states she would be prejudiced if defendant is allowed to call any of these witnesses in her case in chief. Notably, defendant filed no response to this motion.

Failure to make initial disclosures under Rule 26(a)(1) or supplemental disclosures under Rule 26(e)(2) can result in exclusion of undisclosed witnesses or information. See F.R.C.P. 37(c). These witnesses will not be permitted to testify at trial unless the party seeking to use the witnesses had "substantial justification" or the failure was harmless. Id. Here, there has been absolutely no demonstration as to how failure to make proper disclosures is harmless or substantially justified. Therefore, plaintiff's motion to strike (Doc. No. 49) is **GRANTED.** Defendant will not be allowed to use the testimony of Redden, King, or Helwig at trial.

**IV.     Conclusion**

Therefore, for the foregoing reasons:

(1)     Defendant's motion for summary judgment (Doc. No. 37) is **DENIED**;

11

(2) Defendant's motion to strike plaintiff's witnesses' testimony (Doc. No. 46) is **GRANTED**; and

(3) Plaintiff's motion to strike defendant's witnesses (Doc. No. 49) is **GRANTED.**

**IT IS SO ORDERED.**

Date: 6/22/07
Kansas City, Missouri

**S/ FERNANDO J. GAITAN, JR.**
Fernando J. Gaitan, Jr.
Chief United States District Judge